Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )        NO. CR 19-00178 VC
                                 )
EVGENI KOPANKOV and EMANOEL      )
BORISOV,                         )
                                 )
            Defendants.          )
_____)
```

San Francisco, California
Tuesday, February 23, 2021

**TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:
                        DAVID L. ANDERSON
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                BY:  **CHRISTINA LIU**
                     **ASSISTANT UNITED STATES ATTORNEY**

For Defendant Evgeni Kopankov:

                        LAW OFFICE OF MICHAEL & BURCH, LLP
                        One Sansome Street-Suite 3500
                        San Francisco, California  94111
                BY:  **DAVID M. MICHAEL, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Reported By:  Marla F. Knox, RPR, CRR, RMR
              Official Reporter

1   **APPEARANCES VIA ZOOM:**

2   For Defendant Emanoel Borisov:

3                              LAW OFFICES OF JAMES BUSTAMANTE
                             1000 Brannan Street - Suite 488

4                              San Francisco, California  94103
                    BY:  **JAMES BUSTAMANTE**

5                              **ATTORNEY AT LAW**

6   Also Present:       **MARIA ENTCHEVITCH,**
                           **Bulgarian Interpreter**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Tuesday - February 23, 2021**                    **3:10 p.m.**

**P R O C E E D I N G S**

---000---

**THE CLERK:**  Calling case Number 19-CR-00178, USA versus Evgeni Kopankov and USA versus Emanoel Borisov.

Counsel for the Government, please state your appearance for the record.

**MS. LIU:**  Christina Liu for the United States.  Good afternoon.

**MR. BUSTAMANTE:**  Good afternoon, Your Honor, James Bustamante appearing on behalf --

**THE COURT:**  Let's see.  Ms. Liu, I couldn't hear you. Could everybody else hear her?

**MR. BUSTAMANTE:**  Yes.

**THE CLERK:**  Yes, Judge.  Do you have mute original audio on or unmute?

**THE COURT:**  Mute original audio.

**THE CLERK:**  Hit unmute.

**THE COURT:**  Okay.

**THE CLERK:**  Try that again, Ms. Liu.

**MS. LIU:**  Yes.  Christina Liu for the United States. Good afternoon.

**THE COURT:**  Hi.

**MR. BUSTAMANTE:**  Good afternoon, Your Honor, James Bustamante appearing on behalf of Emanoel Borisov, who is

1  present via Zoom, with the Court's permission.

2            **THE COURT:**  Hello.  Hello, Mr. Borisov.

3        **DEFENDANT BORISOV:**  Hello, Your Honor.

4        **MR. MICHAEL:**  Good afternoon, Your Honor, David

5  Michael appearing with Defendant Evgeni Kopankov, who is on

6  Zoom here with an interpreter.

7            **THE COURT:**  Hello.  Hello, Mr. Kopankov.  Can you hear

8  me okay, Mr. Kopankov?

9        **DEFENDANT KOPANKOV:**  Yes.

10       **THE COURT:**  Good.

11       **INTERPRETER:**  Yes, I can.

12       **MR. BUSTAMANTE:**  Your Honor, if I may, I wanted to

13  tell the Court that I appreciated the accommodation for

14  continuing the hearing for the circumstances that I was in, and

15  it is greatly appreciated.  Thank you very much for that.

16       **THE COURT:**  No problem.

17      So, first of all, I gather that the Defendants consent to

18  proceed by Zoom.  I think it is appropriate to proceed by Zoom

19  rather than being in person.

20      Being in person would unnecessarily jeopardize the health

21  and safety of everybody involved.

22      And this case is old and it needs to move forward.  So it

23  would not -- also not be appropriate to continue the -- this

24  conference until such time as we could appear in person.

25      So what do we need to discuss today?  Do we need to set a

1  firmer -- do we need to set a pretrial conference date or what

2  do we need to do?

3          **MS. LIU:**  Yes, Your Honor.

4      We were last before you in early December, and we have an

5  April trial date.  And I believe Defense Counsel has a

6  scheduling request for the Court.

7          **MR. BUSTAMANTE:**  Yes, Your Honor.

8      We had a long discussion with the Government this

9  morning -- Mr. Michael and I and both AUSAs on the case -- and

10 agreed to bring up the matter in front of the Court.

11     And it seems that although the passage of time has

12 certainly occurred, Mr. Michael and I have not been in any

13 better position in terms of the subject matter that we

14 discussed with the Court the last time in terms of our due

15 diligence and investigation given the fact that all the

16 players, including the cooperating witness and both Defendants,

17 are in the Chicago proper area as well as German suburbs.

18     And although candidly, Your Honor, we have been able to do

19 some investigation with a local investigator there, I think we

20 mentioned to the Court the last time that Mr. Michael and I --

21 in terms of our normal practice on these matters -- would have

22 already traveled to Chicago any number of times to do things

23 that need to be done in person.

24     Having said that -- I will let Mr. Michael add anything

25 that he wants -- and given the fact that this is a non

1   in-custody case, we would like to move it forward as much as

2   the Court would like; but we would also like the opportunity to

3   be able to do our job.

4        And so with the Court's permission, we talked with

5   Government Counsel; and we thought some time in the middle of

6   August would be a more realistic certain date where things

7   would open up; more people would be vaccinated -- including

8   myself -- and possibly that time period would allow for us to

9   do our due diligence and travel back and forth from the Bay

10  Area to the Chicago area.

11       And in that conversation, I think the Government conceded

12  and represented that there would be a necessity at some point

13  for them to do the same.

14       And so although, we have got probably more work to do

15  because they have got their own case agents and so forth that

16  are handling the cooperating witness in this case back there in

17  Chicago, we have not been able to do that because we are not

18  located there.

19       **THE COURT:**  Well, I guess one concern I have listening

20  to everything you've said is you seem to be assuming that

21  everything you would normally be doing in person you need to do

22  in person now.

23       And I don't think that's right even in a criminal case.

24  There are certain things that we all used to do in person that

25  we now have to figure out how to do by Zoom.  And that may

1  include witness interviews.

2      And so I guess, you know, I'm a little bit uncomfortable

3  given where we are now with the pandemic and given where we are

4  with this case in just adopting the assumption that anything we

5  used to do in person we need to continue to do in person to

6  work up the case.

7          **MR. BUSTAMANTE:**  Yeah.  And I would agree with that,

8  Your Honor.

9      There is no question -- it is sort of depending on what

10  piece of the dynamic we are talking about, it is all a moving

11  target.

12      And the Court's correct.  There is -- you know, this

13  appearance would be done in person, and we can do it by Zoom.

14      We can talk and have spoken to our investigator on the

15  phone, and we can talk to him on Zoom; but --

16          **THE COURT:**  You can talk to your clients on Zoom.

17          **MR. BUSTAMANTE:**  We can -- well, I will give the Court

18  an example.

19      We had a -- you know, it is a local case here --

20  multi-Defendant -- I will just say more than 8 -- where, you

21  know, there is this concern amongst Defendants and some Defense

22  Counsel that Zoom is not secure.

23      So for purposes of general conversations, people feel very

24  comfortable about doing that.  And then on certain

25  conversations that you would have privately with your client

1   and/or investigators and co-Defendants and co-Counsel, some

2   people are not comfortable doing it on a Zoom conference.

3       And that's one layer, but the more important --

4       **THE COURT:**  Figure out a way to meet in a secure -- in

5   a -- using a medium that your client is comfortable with.

6       And, you know, generalized discomfort without specifics is

7   not a reason to delay the trial I don't think.

8       **MR. BUSTAMANTE:**  Well, it's not a generalized because

9   when any of us -- including the United States Government who

10  has recently been hacked and systems that we all believed, just

11  as a given, were secure from being hacked -- you know, that's

12  the stuff that has been in the New York Times and the news,

13  regular people are hard pressed to have confidence that the

14  stuff that is available to us -- as the Court suggests, some

15  type of medium -- in this day and age, the given is almost

16  nothing is really secure.

17      And so it's not a -- it's not a -- it's not a -- excuse

18  me -- it's not necessarily a given that there are options out

19  there that will fill the gap.

20      And I'm not suggesting to the Court that, you know, it is

21  this open-ended reason for continuing the case; but it is a

22  moving target and --

23      **THE COURT:**  To the extent that you are telling me that

24  your clients' discomfort or somebody's discomfort with having

25  communications over video conference or by telephone is a

1   reason to continue the trial, I disagree with you.

2              **MR. BUSTAMANTE:**  No.

3              **THE COURT:**  And you are going to have to figure out

4   how to communicate.

5              **MR. BUSTAMANTE:**  That is not necessarily -- that is

6   not -- the client communication I think can readily get done.

7         It is the -- and I mentioned this before.  In the 33 or so

8   years of practicing, this particular confidential witness or

9   informant involved in this case, based on just the stuff that

10  we have been able to do remotely -- and we have had this

11  conversation with the U.S. Attorney's Office this morning -- is

12  probably one of the most -- outside of the scope of this case

13  itself was fairly active beforehand and fairly active and

14  ongoing since involving Federal civil cases back in Chicago and

15  involving -- I can just guess because we have not received any

16  *Giglio* material yet.

17        There is a lot of stuff to be done.  And it is in the

18  nature of, you know, we'd have an investigator and/or Counsel

19  with an investigator doing cold calls which is a manner in

20  which you get your most valuable information when a witness

21  doesn't know you are coming.

22        And so without giving away the store, Your Honor, I --

23  trust me.  Both Mr. Michael and I want to move this case along

24  as much as we would like to move all the cases that we are

25  involved but this one in particular.

1        And I know that the Court has concerns about this.  But it

2   is not a frivolous request.  We are doing our best.

3        We did engage an investigator some time ago.  He has done

4   a lot for us, but there is a whole category of work yet to be

5   done that we believe, based on our experience, needs to be done

6   sort of in person and on -- you know, sort of under the

7   category of, quote-unquote, cold work where people don't know

8   you are coming, to put it bluntly.  So --

9        **MR. MICHAEL:**  If I may add to that, Your Honor, if I

10  may, this is not just a simple case of one informant, who may

11  or may not have entrapped our clients into doing what they are

12  being accused of doing.

13       But there is a big large operation that is going on in

14  Chicago.  And it involves the Government's informant and a lot

15  of other business activities and a lot of other lawsuits and

16  another criminal prosecution that has taken place in Chicago

17  itself that has a direct impact on our case.

18       And it involves what we believe is a massive cooperation

19  operation that is going on involving this particular

20  cooperating witness for the Government.

21       I don't think this is of any great surprise to Ms. Liu or

22  the Government in pursuing this case.  They know that there are

23  a number of activities involved that we need to investigate.

24       It is not just a simple matter of the conversations that

25  this informant may have had with our clients and that our

1    clients acted on that conversation and allegedly committed some

2    sort of illegal act.

3         It involves a big, deep investigation into this informant,

4    his family and a number of litigations -- Federal litigations

5    that are taking place in that Chicago area.

6         It is not something we can just hand off to an

7    investigator.  And I don't think it is just something that we

8    can just deal with by having telephone conversations.

9         I think this is something we have to be on the ground for.

10        As Mr. Bustamante said, I have been doing this for a lot

11   of years too; and that's how we feel what has to be done in

12   order to honestly represent our clients so that we can really

13   prepare for trial and for the pretrial motions also in the

14   respective way.

15        The other factor for me -- and I don't know if it is for

16   everybody else -- is that I'm not willing to participate in a

17   trial on the date that this Court has set for a trial because

18   of my own concerns about the health conditions that might be

19   involved.

20        And I respect the Court and don't know how the Court is

21   setting things up for out-of-custody trials, but I feel a lot

22   more comfortable participating in a trial some time down the

23   road when this coronavirus is much more under control.

24        You know, I'm in the age group where I'm much more

25   susceptible than anyone else in this group.  I have my own

1  fears about that.

2      I observed a criminal trial down in Orange County, a

3  murder trial, some time ago; and it is just -- with all due

4  respect, I don't know how this Court -- how you have things

5  organized, Your Honor -- but it was horrible.

6      It was horrible to watch.  It was horrible to see how

7  things transpired, but I think it all --

8          **THE COURT:**  It won't be like that here, I can assure

9  you.  We have had a couple trials in this courthouse already

10  and it won't be like that.

11      Remind me.  Are you retained Counsel or are you appointed?

12          **MR. MICHAEL:**  We are retained.

13          **THE COURT:**  Okay.  And, Ms. Liu, do you have anything

14  that you want to add to this discussion?

15          **MS. LIU:**  No, Your Honor; just that Counsel and I had

16  discussed this morning about the *Giglio* information they were

17  requesting.  And we indicated that we are happy to work with

18  them on the production of that material in due time.

19          **THE COURT:**  Okay.  What does "in due time" mean?

20          **MS. LIU:**  My understanding is that Defense was hoping

21  to push the trial back several months to August and --

22          **MR. BUSTAMANTE:**  Correct.

23          **MR. MICHAEL:**  Correct.

24          **MS. LIU:**  And I don't know that production of *Giglio*

25  at this point, which would be five or six months in advance of

 1    that date, would be appropriate at this point.

 2         But I can say that I have spoken to the agency handler who

 3    supervised the cooperating witness or source during the charged

 4    events in this case and had that person review the file.

 5         And at this point I'm not aware of any information in that

 6    file that needs to be produced.  But, of course, for a more

 7    comprehensive review, I would personally review that file

 8    myself.  And I have not done that yet.  But I am happy to do so

 9    when a trial date is a firm date.

10         **THE COURT:**  So you are joining in the request to move

11    the trial to August?  Is that what I understand?

12         **MS. LIU:**  I'm not joining the request, but I am -- I

13    acknowledge Defense Counsel's concerns.

14         **THE COURT:**  So you are -- are you saying that the

15    Government is ready to go to trial as soon as April?

16         **MS. LIU:**  I think it would be difficult, but we would

17    get there on the Government's side.

18         **THE COURT:**  All right.  So I will grant the request to

19    continue it until August.

20         We will make the trial date August 2nd.  How long do you

21    anticipate the trial lasting?

22         **MS. LIU:**  I believe about a week and a half; but

23    because there are translators, perhaps, two weeks would be

24    safe.  I'm not sure if Defense Counsel --

25         **THE COURT:**  Why don't we make it July 26th to be safe?

1          **MR. MICHAEL:**  July 26th, Your Honor, for what,

2    Your Honor?

3          **THE COURT:**  "To be safe" I said.

4          **MR. MICHAEL:**  July 26th for trial?

5          **THE COURT:**  Yeah.

6          **MR. MICHAEL:**  Okay, gotcha.

7          **THE COURT:**  And then we can do the final pretrial

8    conference the week before that.

9          **MS. LIU:**  That's fine for the Government.

10          **THE COURT:**  And then do we need to set a hearing date

11    for any -- is there -- I vaguely recall you mentioning that

12    there may be some Motion To Suppress or Motion To Dismiss or

13    something like that; is that right?

14          **MR. MICHAEL:**  We do anticipate that, Your Honor.  Do

15    you want to set dates now or deadlines for that?

16          **THE COURT:**  Yes.

17          **MR. MICHAEL:**  Sure.  We will have a pretrial Motion To

18    Suppress or to do something else that we have contemplated.

19          **MR. BUSTAMANTE:**  So as long as we are on that track,

20    Your Honor -- and we appreciate the extra time -- the question

21    of *Giglio* is an important one.

22          Do you want the Court -- do you want us to raise it with

23    you initially as we have or do we do that before a Magistrate

24    handling discovery?

25          How would the Court like to handle that because -- what is

1  the Court's pleasure or practice?

2        **THE COURT:**  I'm happy to handle it.  What --

3        **MR. BUSTAMANTE:**  So *Giglio* is something that I had

4  asked the previous AUSA early on, and -- you know, that's --

5  *Giglio* and *Jencks*, of course -- probably more so *Jencks* than

6  *Giglio* is always a moving target depending on the nature of the

7  case, the parties, whether there has been a revelation of the

8  informant or not.

9        And in this case the revelation of the CI was made early

10  on.  I think as early as the first appearance.  And so that's

11  enabled all of us to do our due diligence especially as we

12  could given the circumstances.

13        But in terms of a case management perspective and moving

14  this case along and getting it done, I think we are --

15  time-wise we are far along.  And the person has been known for

16  some time.

17        And based on, you know, our good-faith representation,

18  Mr. Michael is correct, that there is not only the CI; but

19  there are family members -- immediate family members -- like a

20  spouse -- that is involved with him in both civil litigation

21  related to a business that they have and criminal

22  investigations.

23        And so the *Giglio* disclosure would go a long way in

24  getting everybody prepared for this case without much, if any,

25  prejudice to the Government in terms of if someone wants to

1  categorize it as early disclosure.

2      But as the Court knows -- you know, the Court has been

3  around -- that's a moving target and depends on the

4  circumstance of the case.

5      And I don't see any -- I can't think of any reason why

6  disclosure as soon as they can review the file can't be made

7  forthwith.

8          **THE COURT:**  Okay.  Well, why don't we -- we have now

9  set a trial date of July 26th.  Why don't we set a deadline of

10  the disclosure of any, you know, impeachment material?

11          **MR. BUSTAMANTE:**  That would be great, Your Honor,

12  thank you.

13          **THE COURT:**  Ms. Liu, what about four weeks from today?

14  March 23rd.

15          **MS. LIU:**  Could we have eight weeks?

16          **MR. BUSTAMANTE:**  Just to be clear, I have asked

17  Mr. Neal -- I forget his -- previous AUSA's last name.  I

18  apologize.

19          **THE CLERK:**  Neal Hong.

20          **MR. BUSTAMANTE:**  Yes, Mr. Hong -- for that material

21  for back in the latter part of 2019 and the early part of 2020.

22          **THE COURT:**  Why don't we set a deadline for March --

23  let's see -- why don't we set a deadline for March 23rd.

24      And then if it turns out after you dive into it that it

25  would impose a hardship on you to meet that deadline -- impose

1  a hardship on the Government to meet that deadline, you can

2  file a motion for an extension.

3          **MS. LIU:**  Yes, Your Honor.

4          **THE COURT:**  Okay.  So the deadline to provide any

5  impeachment material -- and do we want to say *Jencks* material

6  as well?

7          **MR. BUSTAMANTE:**  That would be great, Your Honor,

8  thank you.

9          **THE COURT:**  Okay.  Is -- the 23rd of March.  And then,

10  okay.  You have got something up your sleeve that apparently

11  you don't want to tell me about that is not a Motion To

12  Suppress and -- but some motion that you want to file.  Is

13  there a motion?

14          **MR. MICHAEL:**  Yes, Your Honor, that's correct.

15          **THE COURT:**  Okay.  And it is a motion that is -- we

16  wouldn't think about as a motion that would be -- it is not

17  like a motion in limine or something to deal with at the

18  pretrial conference but a substantive potentially dispositive

19  motion that you want to file?

20          **MR. MICHAEL:**  Dispositive as to some issues, if not

21  the whole case.

22          **THE COURT:**  Okay.  And it is not a motion about

23  whether certain evidence should be allowed or something like

24  that, but --

25          **MR. MICHAEL:**  There is that possibility also, but it

1    is also a substantive motion that might lead to dismissal.

2            THE COURT:  Okay.  Well, so why don't we set a

3    deadline for any motion other than motions in limine.  And

4    should we say that the deadline for filing any such motion

5    is -- how about --

6            MR. BUSTAMANTE:  Can we do that -- Your Honor, excuse

7    me.  Could we do that after the *Jencks* and *Giglio* disclosure?

8            THE COURT:  Oh, yeah, I was going to propose a

9    deadline of, like, May 3rd.

10           MR. MICHAEL:  That's exactly what I was thinking.

11           THE COURT:  For the filing of any motion, you know,

12   other than a motion in limine.

13           MR. BUSTAMANTE:  Great.

14           THE COURT:  And we can set -- have the hearing date

15   for that motion to be the 25th of May.  How does that sound?

16           MR. BUSTAMANTE:  Great.

17           MR. MICHAEL:  That sounds fine to us, Your Honor.

18           THE COURT:  And your -- the opposition can be filed on

19   the 14th, and any reply could be filed on the 19th of May.

20           MR. MICHAEL:  Can I ask the Court some procedural

21   questions regarding that?

22           THE COURT:  Sure.

23           MR. MICHAEL:  Let's say that we file a motion that may

24   require an evidentiary hearing.

25           THE COURT:  Just hypothetically.

1                              (Laughter)

2              **MR. MICHAEL:**  Will the Court -- has the Court

3      conducted hearings by Zoom?

4              **THE COURT:**  Oh, yeah, absolutely.

5              **MR. MICHAEL:**  We could do a Zoom hearing; correct?

6              **THE COURT:**  Sure.

7              **MR. MICHAEL:**  With witnesses remotely in Chicago and

8      locally?

9              **THE COURT:**  Sure.

10             **MR. MICHAEL:**  Could I ask the Court -- because I have

11     had some experience with trials during this horrible period of

12     time, does the Court plan on doing a trial and having the jury

13     panel appear and getting voir dired and appear in the jury box

14     for trial or do they scatter throughout the courtroom?

15         Do you have some pattern and game plan for how you do

16     that?

17             **THE COURT:**  Yeah, I mean, like I said, we have had a

18     couple trials; and we will do it in a way where everybody is

19     spaced out.

20         And, you know, we will -- you know, it's -- as to exactly

21     where everybody is sitting and stuff like that, I mean, part of

22     it is going to depend on -- part of it is going to depend on

23     sort of what things are looking like in late July.

24             **MR. MICHAEL:**  Right.  And my experience has been that

25     everybody has been masked during the trial except for the

1   witness that testifies.  Is that the Court's procedures also?

2   **THE COURT:**  I think that will probably be the case,

3   you know, unless we conclude that it is not necessary; but I

4   doubt that.  I doubt we will be there at that time.

5   **MR. MICHAEL:**  Okay.  Fine.  Thank you for that

6   information, Your Honor.  I appreciate it.

7   **THE COURT:**  Okay.  Is there anything else that we can

8   do for you right now?

9   **MS. LIU:**  Your Honor, I believe we need to exclude

10  time from the last trial day of April 12th through July 26th.

11  **THE COURT:**  Well, I mean, I don't know if we

12  necessarily do because there will be motions pending and all

13  that kind of stuff.

14      Why don't we go ahead and exclude time -- just to be safe,

15  we can exclude time between now and the motion hearing date

16  that was just set.

17  **MR. BUSTAMANTE:**  I think, Your Honor, at some point my

18  recollection -- I could be incorrect -- but I think at some

19  point the Court designated upon someone's request -- in fact,

20  the case was designated complex early on, I believe.

21  **THE COURT:**  I think that's right.  But in any event,

22  it's complex case, you know, for -- and also for -- in any

23  event, for effective preparation of Counsel and because of the

24  circumstances created by the pandemic, it is appropriate to

25  exclude time.

 1          **MR. BUSTAMANTE:**  And --

 2          **THE COURT:**  I assume nobody disagrees with that?

 3          **MR. BUSTAMANTE:**  No, Your Honor.

 4          **MS. LIU:**  No, Your Honor.

 5          **MR. BUSTAMANTE:**  And as to the Court's question is

 6   there anything else in terms of case management, could we --

 7   might I suggest, Your Honor, that we can have March 23rd a date

 8   in which the Government can designate any 404(b) material that

 9   it intends to use?  There may not be any.  But that is

10   relatively easy to do, I think.

11          **MS. LIU:**  Your Honor --

12          **THE COURT:**  That sounds --

13          **MS. LIU:**  Your Honor, I was going to say that sounds a

14   bit early especially if the in limine motions aren't due until

15   much later.

16          **MR. BUSTAMANTE:**  So prior subsequent bad acts is

17   pretty --

18          **THE COURT:**  If you want to -- want a few more weeks to

19   do that, that's fine too.  Do it in, like, mid April.

20          **MS. LIU:**  Sure.  That works for the Government.

21          **MR. BUSTAMANTE:**  That's great.  Thank you.

22          **THE COURT:**  Also, the deadline to make 404(b)

23   disclosures will be April 19th.

24      All right.  Anything else?

25          **MR. BUSTAMANTE:**  No.  Thank you so much for your time.

1    I appreciate it.

2              **MR. MICHAEL:**  Nothing on my part, Your Honor.  Thank

3    you very much for your time and your explanations.

4              **THE COURT:**  Okay.  And, of course, we will talk a lot

5    more about the logistics about the trial as we get closer and

6    we have more certainty about how -- you know, what the

7    situation is.

8              **MR. MICHAEL:**  Thank you.

9              **THE COURT:**  Okay.  Very good.  I'm going to step away.

10   I will be back in just a moment.

11                   (Proceedings adjourned at 3:38 p.m.)

12                             ---oOo---

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                           **CERTIFICATE OF REPORTER**

4              We certify that the foregoing is a correct transcript

5       from the record of proceedings in the above-entitled matter.

6

7       DATE:   Friday, April 30, 2021

8

9

10                    _Marla Knox_

11       _____

12                    Marla F. Knox, RPR, CRR, RMR
                            U.S. Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25