Pages 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
   VS.                         )   NO. CR 19-00178-VC
                               )
EVGENI KOPANKOV, et al.,       )
                               )
            Defendants.        )
_____)

San Francisco, California
Wednesday, June 2, 2021

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:** (Via Zoom Videoconference.)

For Plaintiff:              STEPHANIE M. HINDS
                            Acting United States Attorney
                            450 Golden Gate Avenue
                            San Francisco, California  94102
                    BY:  **CHRISTINA LIU**
                         **ASEEM PADUKONE**
                         **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant Kopankov:
                            LAW OFFICE OF MICHAEL & BURCH, LLP
                            One Sansome Street - Suite 3500
                            San Francisco, California 94111
                    BY:  **DAVID M. MICHAEL, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

1   **APPEARANCES**:   (CONTINUED)

2   For Defendant Borisov:
                              LAW OFFICES OF JAMES BUSTAMANTE
3                              1000 Brannan Street - Suite 488
                              San Francisco, California 94103
4                   BY:  **JAMES BUSTAMANTE, ATTORNEY AT LAW**

5   **Also Present:      Martin Sabelli**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

```
1   Wednesday - June 2, 2021                          4:14 p.m.

2                        P R O C E E D I N G S

3                            ---oOo---

4          THE CLERK:  Calling Case 19-CR-178, United

5   States of America versus Evgeni Kopankov versus -- and Emanoel

6   Borisov.

7       Counsel, please state your appearances, start with the

8   Government first.

9          MS. LIU:  Christina Liu and Aseem Padukone for the

10  United States.  Good afternoon.

11         THE COURT:  Good afternoon.

12         MR. MICHAEL:  Good afternoon, Your Honor.  David

13  Michael appearing for Evgeni Kopankov, and I thank the Court

14  for waiving his appearance today at the hearing.

15      I would also like to advise the Court that I've asked

16  Mr. Martin Sabelli to be present at this hearing.  He may be an

17  attorney that's joining the defense for trial.  And so with

18  the Court's permission, I ask that Mr. Sabelli will be able to

19  participate.

20         THE COURT:  The more the merrier.

21         MR. BUSTAMANTE:  Good afternoon, Your Honor.  James

22  Bustamante appearing on behalf of Mr. Borisov, whose appearance

23  is also waived.

24         MR. SABELLI:  Good afternoon, Your Honor.  I apologize

25  for not having my suit jacket.  I'm in Washington and left it
```

1    at the law office, so I need all the agility I can have anyway,

2    so thank you for letting me in here.

3          **THE COURT:**  No problem.

4       So, Mr. Sabelli, you would be representing, Mr. Kopankov?

5          **MR. SABELLI:**  Your Honor, depending, of course, on

6    what happens today and over the next few weeks, it's my

7    intention to come into the case; yes, Your Honor.

8          **THE COURT:**  Okay.

9       So -- and then before we -- you tell me what's going on,

10   remind me of the case schedule.

11         **MR. BUSTAMANTE:**  So presently, Your Honor, the case is

12   scheduled for trial at the end of July.

13         **THE COURT:**  Right.

14         **MR. BUSTAMANTE:**  I believe that the motion filing for

15   defense, I think, is due this Monday, which I believe is the

16   7th.  Or, actually, I take it back.  The Court set a hearing in

17   June -- I believe it was the 22nd -- and left it to the parties

18   to do the briefing based on the local rules.

19      There was some communication between Ms. Liu and

20   Mr. Michael and I about accommodating a particular schedule

21   that would follow the local rules which would entail filing by

22   this Monday and then the rest would flow from that.  But, in

23   essence, there is a hearing on June 22nd, and trial was to

24   begin towards the end of July.

25         **THE COURT:**  Pretrial conference was like a week or so

**PROCEEDINGS**

1    before the trial?

2              **MR. BUSTAMANTE:**  Yes, that's correct, Your Honor.

3              **MS. LIU:**  Yes, on July 19th.

4              **THE COURT:**  Okay.

5              **MR. BUSTAMANTE:**  So --

6              **THE COURT:**  All right.  And then what's -- all I saw

7    was a vague e-mail raising some concerns about discovery or --

8              **MR. BUSTAMANTE:**  *Giglio* and Jencks.

9              **THE COURT:**  Okay.

10             **MS. LIU:**  Yes, Your Honor.  If it would be helpful, I

11   can give a summary of events that have occurred since our last

12   status, to set the scene.

13             **THE COURT:**  Okay.  That's fine.

14             **MS. LIU:**  So our last status, we were before you on

15   May 4th.  At that hearing, you -- we discussed various

16   discovery issues and you set some deadlines for the parties to

17   adhere to.  Right after that, we -- the Government conferred

18   with Mr. Borisov's counsel on some matters, including

19   redactions; and on May 11th Mr. Borisov's counsel sent us a

20   letter with discovery requests, as Your Honor had ordered.

21        Shortly after that, the Government worked very hard toward

22   meeting its May 25th deadline and -- well, let me back up a

23   little bit.

24        One of big issues at the last status was the CS's pending

25   case in Chicago.  At that point, no charges had been filed yet,

**PROCEEDINGS**

1   and so the Government had produced a letter disclosure

2   summarizing the parameters of that investigation.

3          On May 21st, which was the Friday before the discovery

4   deadline, a complaint was filed in Chicago in federal court

5   against the CS, that was still sealed.  On Monday, May 24th,

6   the CS was arrested and made a number of statements to law

7   enforcement.  And the next day, on May 25th, was the discovery

8   deadline.  So by that date the Government had gone through the

9   investigative file in the CS's DEA and FBI files, and several

10  other categories of discovery.  And by May 25th, we had

11  produced those with two exceptions.

12         As we mentioned in our filing with the Court, we filed a

13  notice describing our discovery status.  The two exceptions

14  were FBI text messages that FBI headquarters was still trying

15  to gather and resolve due to a technological hurdle; and the

16  CS -- the report of the CS's statements at the time of arrest.

17  As of May 25th, we did not have that report yet because FBI was

18  still writing it up seeing as the arrest had occurred the day

19  before, but we said we would provide that promptly.

20         So that was May 25th and --

21         **MR. BUSTAMANTE:**  I'm sorry.  Can I just ask --

22  interrupt and ask a question about something you just stated?

23  You're going really fast.

24         Ms. Liu, did you just state that there's a report related

25  to his arrest that's still to be produced which is separate

 1    from the one that was produced?

 2          MS. LIU:  No.  So I'm getting there.  You have that by

 3    now.  But I want to make sure we take the Court through all the

 4    events, because there is many overlapping events.

 5          MR. BUSTAMANTE:  Okay.

 6          MS. LIU:  So in summary, on May 25th, we filed the

 7    notice; we produced the discovery we had then; and we responded

 8    to defense's -- to Mr. Borisov's counsel's letter regarding his

 9    demands.

10       Okay.  So that was May 25.  May 26th, I sent -- we sent

11    over a stipulation to the motion deadlines and the pretrial

12    deadlines to defense to consider with, as Mr. Bustamante

13    mentioned, June 7th as the defense's motion filing date.  And

14    within a few days after that, we received the arrest report,

15    discussed with supervisors and Chicago about redactions,

16    applied redactions.  And then by Friday, which was about a

17    one-day turnaround, we produced that redacted arrest report to

18    defense counsel.  Throughout this process, the Government has

19    worked with defense to locate discovery, to resolve any tech

20    access issues to discovery.  And our position is that, at this

21    time, we've produced the discovery we have.

22       I know that defense is going to raise a number of

23    concerns.  I don't know if the Court wants to hear from the

24    Government first or defense first on those topics.

25          THE COURT:  Well, maybe I should start by hearing what

 1   the defense's concerns are before I hear your response to those

 2   concerns.

 3           **MR. MICHAEL:**  Let me start off on that, Your Honor,

 4   because I'm the one that asked for this status conference

 5   initially.  The Government's reference to their CI is an

 6   individual by the name of Ilija Ristik, otherwise known as Iko.

 7   And what he was arrested for --

 8           **THE COURT:**  Iko?

 9           **MR. MICHAEL:**  Iko is his nickname, I-k-o.

10           **THE COURT:**  Okay.

11           **MR. MICHAEL:**  And what was he -- he was arrested for a

12   crime involving wire fraud and denial of honest services.  What

13   he was arrested for, substantively, was paying -- probably,

14   more than $300,000, but the Government at least alleges at

15   least $280,000, in bribes to an employee of a major trucking

16   company, a trucking company that does probably over $9 billion

17   in trucking business.

18       And by paying that bribe to that employee -- we'll call

19   him Mr. Ristik or Iko -- he was able to obtain, unlawfully,

20   trucking contracts from that large corporation.  He obtained

21   trucking contracts for his trucking company in Chicago;

22   trucking contracts that could have gone to other competing

23   trucking companies in the Chicago area, including my client's

24   trucking company, Evgeni Kopankov's trucking company, which he

25   had and he was operating in competition with Mr. Ristik, which

**PROCEEDINGS**

1   really completely influences and stains and damages this whole

2   case based on this CI or CS, Mr. Ristik.  Because we believe

3   that when -- if we are able to and once we investigate this

4   complete incident and go beyond just the redacted -- the report

5   that the Government has provided, we're going to find out that

6   what Mr. Ristik's goal was was to destroy my client's trucking

7   business.

8        And we believe that as part of what he did, which occurred

9   in the -- 2018, I think, through 2019, which is the same time

10  period of the offenses that are alleged against my client --

11  what he did is he became the instigator of this whole crazed

12  plan to cause my client to be involved -- which he wasn't --

13  but to attempt to cause my client to be involved in some sort

14  of illegal activity -- in order to do what? -- to destroy his

15  trucking company.

16       And that's what we believe that we need a full

17  investigation of.  We need to find out what's behind all

18  this -- the complaint and the redacted report, regarding this

19  guy.  It really has a complete 100 percent direct effect on

20  this case.

21       You know, is he going to be called as a witness to

22  testify?  Will the Government ever bring him to testify?  He

23  has lawyered up.  He's got a lawyer.  He was arrested.  He was

24  booked.

25       And I think that it's important to note, Your Honor, that

**PROCEEDINGS**

1   this crime that he's been charged with -- and from the reports

2   we've received from the Government about this CI, he's had

3   other offenses and other crimes that he's committed.  And he

4   has committed all these crimes, and this particular one crime,

5   during the time that he is an informant for the Government,

6   which we think is somewhat disgraceful and certainly has legal

7   concerns that we want to bring up.

8       So it's impossible -- impossible for us to take this new

9   evidence, fully investigate it; go back to Chicago; find out

10  from other trucking companies who were affected; find out what

11  effect that had on my client's trucking company and damaged

12  hits trucking company; and whether or not this informant had a

13  plan, a plan based on what he was -- is being charged and how

14  he instigated this whole operation to try to get my client

15  involved in some criminal activity.

16      We need the time to do that investigation.  That's as far

17  as that's concerned.  And I think Mr. Bustamante has some other

18  concerns.

19      **MR. BUSTAMANTE:**  I do, Your Honor.  And I'm going to

20  try to not go deep into the weeds because there is a lot of

21  depth and there is a lot of weeds, but like I did the last

22  time, I'm going to point the Court to just a couple of examples

23  that I think are undisputed and somewhat disturbing.

24      And I'm going to start off by just letting the Court know

25  that the disclosures that we received based on the Court --

**PROCEEDINGS**

1   remember, the Court had originally ordered Jencks and *Giglio* by

2   a particular timeline, there is some confusion about that which

3   is why we had the status back on May 4th, and then we clarified

4   it and set up new dates.

5       So based on the Court's orders thus far with regard to

6   *Giglio* and Jencks, we have received 400 pages on the March 23rd

7   disclosure.  We received another disclosure on April 6th of 67

8   pages related to Jencks and *Giglio*.  And then the last

9   discovery dump which was on the 25th, was a 152 pages.  And

10  then a number of days later, which was last Friday, was the day

11  that we received this 17-page complaint alleging this

12  extraordinary fraud that was perpetrated --

13          **MS. LIU:**  That's not correct.

14          **MR. BUSTAMANTE:**  -- between Iko, or Mr. Ristik, and

15  the vice president in Chicago of the biggest trucking company

16  in the country.

17      In the 17-page complaint that we had the actual victim

18  company is not disclosed; it's still sealed.  The VP, who is

19  now a cooperator for the Government in Chicago, ironically, is

20  not disclosed.

21      And so, as a colleague of mine recently -- Mr. Sabelli

22  reminded me, when you've got fraud to this extent and in this

23  great depth and so -- you've got probably another hundred types

24  of fraud or lies that were perpetrated by Mr. Ristik in order

25  to facilitate, I think it was $12.2 million of revenue to him

1    based on paying this other -- this VP $280,000.

2        So we're sort of stuck.  We just got this last week.  And

3    Mr. Ristik -- I'm going to be candid with the Court because

4    I've been thinking about this constantly since the day we

5    received it.

6        You know, Mr. Ristik's claim in this case, so the Court

7    knows is, during of period of a very short period of time, four

8    to five days, he is setting up controlled phone calls and

9    meetings with my client and Mr. Brooks.  And so, ostensibly, to

10   get these recordings in, they are going to have to call

11   Mr. Ristik.

12       That's one of the things I would like to have the Court do

13   is consider having the Government tell us whether Mr. Ristik

14   was, in fact, on their witness list and is going to testify or

15   not.  I don't think that it's going to make much difference in

16   terms of what we need to do.

17       Because even if Mr. Ristik is not going to testify -- he

18   is not represented by counsel out of Chicago, and he now has

19   this huge monster criminal complaint so far, indictment

20   forthcoming I'm sure.  You know, I don't see a competent lawyer

21   letting him get up on the stand to testify.  And, quite

22   frankly, I don't see the Government giving him immunity while

23   he is committing this fraud while he is working for the

24   Government on our case.

25       It's all sealed, so we don't even have a starting point to

1  begin with.  But there is another angle here, Your Honor,

2  that's important, and that is we also got disclosure -- and

3  this is -- this just occurred to me in the last, you know,

4  half-hour about why it's important.

5      Mr. Brooks, the co-defendant in this case, who is now

6  testifying against our clients, has been debriefed on three

7  separate occasions.  And we know that he has a 5K plea

8  agreement.  And what we just received in this last disclosure

9  either the 25th or shortly thereafter was an FBI 302, that is

10 seven pages long with sort of surprisingly hardly any

11 redaction, you know, little to no redactions at all.  But it

12 lays out a scenario of Mr. Brooks, their star witness, working

13 for a construction company that was involved in fraud, money

14 laundering, gun running, drug trafficking.

15     And then the key piece is that the owner of that company,

16 that Mr. Brooks worked for and was friends with, and

17 purportedly told things about our case while it was going on,

18 that owner of that company in this debriefing, because the

19 person that was being debriefed, Your Honor, was the accountant

20 for the company.  And in her debriefing, she talks about how

21 all the odd money laundering items, things that are going on,

22 and drug trafficking, and she is very concerned about the

23 working there.

24     She also reveals that the owner of that company paid the

25 legal fees for Mr. Brooks.  And if that is true, then that

1   payment to Mr. Brooks was to keep him quiet out of all the

2   criminal activity that Mr. Brooks was involved with, witnessed

3   or, you know, gave a green light to as a participant.

4        And why this is important, Your Honor, is because we know

5   that that's true based on this seven-page debriefing by a

6   person that has no, you know -- what's the term?

7             **THE COURT:**  Skin in the game?

8             **MR. BUSTAMANTE:**  No skin in the game.  No dog in the

9   fight.  Whatever it may be.

10       And in Mr. Brooks's three debriefings, Your Honor,

11  Mr. Brooks never mentions once any of the things going on at

12  this construction company that he is a participant in.  And the

13  problem with that is that now -- as the Court knows, someone

14  who does a 5K plea and agrees to testify and cooperate against

15  the other defendants, sits down in a debriefing with law

16  enforcement and tells them everything about anything they've

17  ever done that's relative in time or category for what he is

18  going to testify about so that they're not surprised.

19       Well, the problem now is, Your Honor, the date of this

20  report is 4/25/2019.  They approached her on the 23rd of --

21  January, February, March -- April.  She didn't want to talk to

22  them at first because she was afraid of the people that worked

23  in the company and of this particular owner that I'm talking

24  about.  And then they convinced her to sit down and debrief

25  two days later.

PROCEEDINGS

1          We are just now getting this disclosure that was -- this

2    report was made back two years ago, exactly.  More than

3    two years ago.

4          And that is disturbing because we've been asking for

5    *Giglio* and Jencks material related to Mr. Brooks and Mr. Ristik

6    for a number of months now.  And I know that this is a case

7    that was inherited by Ms. Liu from Neil Hong.  And I know that

8    Neil Hong was attempting -- and I said this before -- to get

9    information from the Chicago office.

10         But I now discover -- another thing that occurred to me

11   is, when I was asking Mr. Hong about these events and *Giglio*

12   disclosure on Mr. Ristik because I knew there was a lot behind

13   the scenes, I just had the suspicion, on one of the occasions

14   where Mr. Brooks is actually debriefed, it's actually in

15   Chicago and there is Chicago people there, and Neil Hong is

16   there.

17         And so representations to me that he had no knowledge

18   about the Chicago office or never talked to those people was

19   totally misleading to me.  He could have said:  I can't tell

20   you, Jim.

21         But he actually told me:  I don't know anything about it.

22   I haven't talked to these people yet.

23         So there is a pattern of late disclosure.  There is a

24   pattern of these reports, you know, being two years old.  And

25   then -- I wish I could put this on the screen, Your Honor, but

**PROCEEDINGS**

1  now we have Mr. Ristik going back to Iko, the guy who just got

2  arrested.  There is a seven-page report of his arrest.  And he

3  talks about the -- to agent, the case agent that's arresting

4  him and telling him:  They're making a big mistake.  While I

5  was doing this, I was actually working for the FBI.

6       The agent goes:  No.  No.  We cut you off a long time ago.

7  No, you're not.

8       And, by the way, you've now saved me from having to

9  testify in this other case in California, because now I have

10  this case.

11       And what I'm just going to show you, because I don't have

12  it in on the screen, Your Honor, is that's page 1, that's a

13  redaction; page 2, that's a redaction; page 3, those are

14  redacted; page 4, those are redacted.

15            **THE COURT:**  Okay.  I get it.

16            **MR. BUSTAMANTE:**  Yeah.  So it goes on.

17       And so I reached out to the Government, and my position is

18  this:  I understand if some of those things, on the smaller

19  ones, if the name of the VP for the company is named, or the

20  name of the company is named, I get that; the matter is still

21  sealed, understood.

22       But these huge redactions are either one of three things:

23  Because Mr. Ristik is under arrest, he is being taken to,

24  you know, a confinement; he knows he is in a lot of trouble and

25  he's attempting to talk his way out of it, so he is -- and I am

1    informed and believe by the Government that some of those

2    redactions have to do with other criminal activity that he was

3    involved in.  And if that is true, we're entitled to that.

4         I mean, you know, I've got written here the local

5    assistant U.S. attorney rules on *Giglio*, I forget the number,

6    but it's pretty basic.  And if this guy is talking about this

7    crime or other crimes or what he thinks the FBI believed he was

8    doing for them or with them or against them, all of those

9    categories are free game for us.  And I'm at a loss as to why

10   this stuff is so redacted still to this date.

11        I'll also add that Ms. Liu was candid with us about text

12   messages not being provided because the FBI has some technical

13   difficulties, and we're not sure whether we have all the text

14   messages.

15        But here is the last category as to -- just the third

16   example.  There is e-mail disclosures that I've received and

17   the nature of the e-mail disclosure goes like this:  The CI,

18   Mr. Ristik, e-mailed the agent A, B, C, and D, and the agent

19   responded, and I'm only giving you a snippet or a summary of

20   that conversation.

21        That's not how it works.  Any e-mails or any communication

22   that Mr. Ristik had at any time with his handling officer

23   related to his controlled calls, his activity in this case, or

24   activity in any case for that matter, all those e-mails and

25   text messages are to be disclosed.  And we don't have any.  I

1   have no copies of any e-mails by Mr. Ristik and his handling

2   officer.

3       So here is the thing, Your Honor, you know -- and the

4   Court on -- I'm not complaining.  I'm just giving the Court

5   notice of the things that have been happening since we started

6   having this discussion with the Court.  Right?

7       And I've tried to be as diligent as I possibly can to

8   bring it to the attention of the Court in terms of a case

9   management problem.  And, you know, and here we are with this

10  voluminous amount of information that's dedicated to the two

11  main -- the two only, quote/unquote, percipient witnesses in

12  this case are Mr. Brooks and Mr. Ristik.

13      And whether Mr. Ristik testifies or not, the case agent

14  that talks about him and introduces his participation because

15  they have to introduce his part of the tapes makes it still

16  open game for us to be able to do a cross-examination about

17  whether it's Mr. Ristik or the case agent that handled him.

18      So if I can have one quick second, Your Honor, because I

19  have a list and I just want to make sure I didn't miss

20  anything.

21          MS. LIU:  And, Your Honor, I have some clarifications

22  before Mr. Bustamante is done.

23          MR. BUSTAMANTE:  Yeah.  I think those are the

24  strongest examples of where we are, Your Honor.

25          THE COURT:  So what are you asking for?

1          **MR. BUSTAMANTE:**  So we're asking for more time to be

2     able to do these things, because this case -- and here is what

3     I know:  Mr. Ristik, in the long list of other things that he's

4     involved in, he's also involved in a civil RICO case in

5     Chicago.  His significant other, his wife, is involved in a

6     federal criminal case that was resolved back there.

7          And although we have done some, as we've told the Court

8     all along, we do have an investigator down there.  We've done

9     some paper investigation early on, but this thing is kicked

10    wide open now.  And what we are doing, Your Honor, we don't

11    want to go to trial by being hijacked.

12          And I tried to reach out to the Government and say, you

13    know, Why would you not want to agree to a continuance?  Why

14    would you -- you know, no-fault of Ms. Liu, that this thing

15    just got indicted, you know.  Chicago is in charge of the

16    timing of that indictment.

17          And I don't know -- I don't know what Chicago had in mind,

18    the authorities back there.  Did they want this guy to testify

19    and not indict him?

20          Or have we pushed so hard that they were forced to do the

21    right thing and say, Well, you know, if this is a pending

22    investigation and he is going to hit the stand, you know, we

23    better not get caught not divulging this investigation.

24          But that's the Chicago office's decision, not a decision

25    made here, I'm sure.

**PROCEEDINGS**

1  　　　So we are asking for more time because first of all, you

2  know, based on all these things coming about, that there could

3  be, you know, a possible resolution.

4  　　　But more importantly, the clients and defense counsel

5  should have an opportunity to do a competent job.  And the fact

6  that we've now had all this stuff laid at our feet at this late

7  hour, with reports that are over two years old, I would hope

8  that the Court would see that the request is not made out of,

9  you know, out of thin air.  And we've been trying and I've been

10 trying, Mr. Michael has been trying to push hard to get these

11 disclosures and --

12 　　　**THE COURT:**  Yeah.  Okay.  So, you know, part of the

13 problem is that you're speaking, you know, to me as if I know

14 the ins and outs of the case and the people involved.

15 　　　**MR. BUSTAMANTE:**  I understand that.

16 　　　**THE COURT:**  Of course I don't at this stage.  So it's

17 hard for me to follow everything that you're saying.  I think

18 I've got the gist.

19 　　　But what -- Ms. Liu, you said you want to respond to some

20 of this stuff.

21 　　　**MS. LIU:**  Yes, just briefly, Your Honor.

22 　　　There is four points I want to respond to.  First, what

23 Mr. Michael raised about the CS's trucking-related scheme out

24 in Chicago.  The Government had disclosed this by summary

25 letter disclosure back in March.  So at least in March the

**PROCEEDINGS**

1  defense had notice of it, and knew that this was a possibility,

2  and that this was something they should look into.  And so that

3  was two months ago.  They have had time to investigate it and

4  we're still about two months from trial, so they still have

5  time.

6       The complaint, once it was unsealed was produced by the

7  May 25th deadline, so I don't think it's fair to characterize

8  it as late.  So that's the first topic.

9       Secondly, as to the report about Brooks's construction

10 activities, there was a short summary report that was disclosed

11 back in March -- by the March 23rd deadline.  So defense had

12 notice of that.  And for the more detailed report, we found

13 that because -- following the Court's very good guidance about

14 spending more time on the investigative file, we went through

15 the investigative file, we found this report.  And that's why

16 we produced it by the May 25th deadline.  So I don't think it's

17 fair to characterize that as late since we did make it by the

18 May 25th deadline.

19      Third, as to the redactions on the arrest report, I talked

20 to Mr. Bustamante shortly before today's hearing, I have not

21 heard from Mr. Michael; but through that meeting and conferring

22 process I think there are a few redactions that we can reach a

23 compromise on by -- specifically by the Government lifting some

24 of the redactions.  There are other redactions that relate to

25 his personal residence, the logistics of his transport, his

**PROCEEDINGS**

1    personal -- the logistics of his personal effects that I don't

2    think we can agree on.

3         And so if the Court is amenable, we can certainly submit

4    that report in unredacted form to the Court for an ex parte in

5    camera review.  But I don't think the redactions are something

6    that would justify a trial continuance.

7         Lastly, for the e-mails and the texts that the CS

8    exchanged with the agents, we have proceeded by letter

9    disclosure summaries of the e-mails and texts that we have

10   already.  As I stated, FBI headquarters is still working on

11   recovering the remaining texts, if they exist; but we do have a

12   large volume of them and that has been disclosed.  It's not

13   accurate to say that we have not produced any of that.

14        And in short, I think defense has everything they need to

15   conduct their investigation, and to mount a strong defense by

16   the July 26th deadline -- or July 26th trial.  And I don't

17   think it's a reason to continue the trial.

18        **THE COURT:**  Well, what about -- I mean, again, you

19   know, I don't really know enough about the details of the case

20   at this stage to know the answer to this, but what about Ristik

21   and his testimony?

22        I mean, I gather that if the Government doesn't call

23   Ristik, the defense has a right to.  And gathering from what

24   has been said that the defense wants to call Ristik, or may

25   well want to call Ristik, and presumably Ristik will invoke.

**PROCEEDINGS**

1   Right?

2      So what is -- I mean, isn't that in itself a real obstacle

3   to going to trial in late July?

4      **MS. LIU:** I don't think so because while if the -- if

5   defense calls the CS and if he invokes, it would be difficult

6   to get testimony out of him that way. If the Government calls

7   Mr. Ristik, there are methods we can look into to perhaps

8   immunize or compel his testimony. But since that's something

9   that the Government would have to work through in order to call

10  him as a government witness, I don't think that's a reason to

11  delay the trial on defense's part.

12     **THE COURT:** I'm not sure I understood. I mean, if --

13  and maybe it's premature to make a call on that issue. But if

14  the Government -- I mean, sorry. If the defense wants to call

15  him and he refuses to testify, is that -- is that a reason to

16  continue the trial? Or do we go forward and just have him take

17  the stand and invoke at trial or outside the presence of the

18  jury or whatever?

19     **MS. LIU:** That, I suppose, is one option. Although,

20  whether or not we continue the trial by a few months or however

21  many weeks or however much the Court wants, I don't think that

22  that particular issue would be solved either way. So it's not

23  a reason to continue the trial.

24     If the defense feels that this CS's pending case is a

25  reason to motion in limine exclude him as a government witness

**PROCEEDINGS**

1  up front, the Court very expressly gave them that option by

2  setting a motion hearing date on June 22nd.  And the deadline

3  for that filing is June 7th, according to the local rules.  So

4  they have a remedy for it if they don't -- I'm sorry.  The

5  Court was starting to speak.

6      **THE COURT:**  That's okay.  Go ahead.

7      **MS. LIU:**  So there is a remedy if they think that

8  Mr. Ristik should -- or the CS should not be called as a

9  government witness; but I think at this point it's premature to

10  rule it out.

11      **THE COURT:**  Let me ask -- and this is for the defense.

12   You know, we have this hearing date on June 22nd, I guess

13  you have a filing deadline of June 7th or thereabouts.  And it

14  was, if I remember correctly, it was to file substantive

15  motions; not motions in limine, but substantive pretrial

16  motions.  Is that right?

17      **MR. BUSTAMANTE:**  That's correct, Your Honor, in limine

18  or other motions of that matter related to pretrial was -- was

19  at another time.  That --

20      **THE COURT:**  Okay.  And so what is the motion that you

21  are envisioning filing to be heard on June 22nd?

22      **MR. BUSTAMANTE:**  Well, here is -- if I could -- I want

23  to respond to the Court's question, but I also want to just

24  give a brief response to the three points that Mr. Liu made.

25      **THE COURT:**  First, answer my question.

**PROCEEDINGS**

1          **MR. BUSTAMANTE:**  I don't -- I don't presently have any

2    substantive motions in mind; however, the amount of information

3    that was just given to us and the nature and the manner in

4    which it was disclosed, and the way it was handled by Chicago

5    authorities, and maybe the FBI people, there may be substantive

6    motions having to do with prosecutorial misconduct, and I don't

7    know that.

8          **THE COURT:**  Okay.

9          **MR. BUSTAMANTE:**  So that's the first --

10          **THE COURT:**  But short of that, short of a motion

11   flowing from what was recently disclosed to you, on the 25th,

12   you know, a few days before, whatever, you weren't -- you

13   weren't planning on using that hearing date is what I'm hearing

14   from you; right?

15          **MR. BUSTAMANTE:**  Not -- I can't definitively say, and

16   I'm speaking for Mr. Borisov only --

17          **THE COURT:**  Right.

18          **MR. BUSTAMANTE:**  -- whether we were going to or not

19   because this -- the trouble --

20          **THE COURT:**  Did you have any other motions in mind?

21     I mean, it's June 2nd; right?  So if you had some other

22   motion in mind you've already, you know, gone a long way

23   towards finalizing your brief, I assume.  So I gather that you

24   were not -- you were not otherwise planning on filing a motion

25   on June 2nd; right?

**PROCEEDINGS**

1          **MR. BUSTAMANTE:**  On behalf of Mr. Borisov, no.

2          **THE COURT:**  Okay.  Mr. Michael?

3          **MR. BUSTAMANTE:**  In the category that the Court just

4    mentioned.

5          **THE COURT:**  Right.

6       Mr. Michael?

7          **MR. MICHAEL:**  Well, your Honor, we haven't really gone

8    around and around in trying to discover, determine exactly what

9    motions we want to file --

10         **THE COURT:**  So -- but it's June 2nd.  So the question

11   I was asking is:  Were you otherwise planning on filing a

12   motion on June 7th to be heard on the 22nd that -- motion to

13   dismiss the indictment or something along those lines -- you

14   didn't have anything in the works.

15      It sounds like you may both be interested in filing a

16   motion to dismiss on prosecutorial misconduct grounds or

17   failure to disclose something or whatever; but up until now,

18   you haven't had a motion in the works.  So what I would --

19         **MR. BUSTAMANTE:**  That's correct, Your Honor.

20         **THE COURT:**  So what I would propose is that the trial

21   date remains on as of now, and the pretrial conference remains

22   on as of now.  And if you want to file -- as I mentioned,

23   Mr. Bustamante, I was only able to understand about half of

24   what you said because you were presuming that I had way more

25   knowledge about nitty-gritty details of the case than I

**PROCEEDINGS**

1   actually do.

2       If you want to file a motion for a continuance, file a

3   motion for a continuance and we'll hear it on the 22nd.

4           **MR. BUSTAMANTE:**  Okay.

5           **THE COURT:**  And you need to, you know, document the

6   basis for your motion and then the Government can respond to

7   it; and I'll have time to read it and familiarize myself with

8   the facts, and then I'll decide the motion.  But in the

9   meantime, you need to also keep preparing for trial, because as

10  of now the trial date is still on.

11          **MR. BUSTAMANTE:**  Fair enough Your Honor.  But I want

12  to add something because -- I want to point something out to

13  the Court that appears to be --

14          **THE COURT:**  I mean, you can't get a continuance by

15  requesting an emergency status conference and spitting all this

16  stuff out that I'm not familiar with.

17          **RIGHT:**  I understand that, Your Honor.  I'm just going

18  to give the Court -- and the substance of it is not the

19  important piece.  It's the nature of the representation.

20      So Ms. Liu just went through three or four items saying

21  that you were given this disclosure, so it gave you the

22  information you needed to start.  And the first one is the key

23  to what the problem has been.

24      So her response to the new complaint was back in

25  March 23rd, we gave disclosure to the other side about Mr. --

1    and the Court will recall, I read from -- three sentences from

2    a paragraph that said the FBI has determined that Mr. Ristik is

3    involved in a fraud and he paid someone 280 and he made 12.2.

4        The Court will recall, I was complaining -- that was it.

5    And the Court said, You people need to get some more effort

6    into this and get this disclosure to him.

7        So that being described as a disclosure is ludicrous.

8        THE COURT:  Okay.  But -- hold on.  It's time to turn

9    down the thermostat.

10       MR. BUSTAMANTE:  I apologize.

11       THE COURT:  As I said, you know, you cannot get a

12   continuance this way.

13       MR. BUSTAMANTE:  I got it.

14       THE COURT:  And you have two months before the start

15   of trial, so you have a long time to conduct the investigation

16   of the stuff that was disclosed to you recently.  And so you

17   should not count on a continuance.  You can file a motion for a

18   continuance if you wish, and document in detail the reasons

19   supporting that continuance.  And I will consider it and we can

20   have a hearing on the 22nd, which is the hearing date we had

21   reserved for whatever substantive motion you might have decided

22   to file but aren't filing.

23       And I will decide it then.  But I'm going to tell you

24   right now, you've got two months to prepare for trial and you

25   better keep preparing for trial.

PROCEEDINGS

```
 1              MR. MICHAEL:  Your Honor --

 2              THE COURT:  You better start investigating all of this

 3      stuff vigorously, like now.

 4              MR. BUSTAMANTE:  I get the Court's message --

 5              THE COURT:  And actually you have Mr. Sabelli on board

 6      now who will be able to do the work of at least three lawyers

 7      between now and the time of trial.

 8              MR. BUSTAMANTE:  He does have that reputation.

 9              MR. MICHAEL:  We don't really have him on board, Your

10      Honor.

11              MR. SABELLI:  Your Honor, I'm just a passenger for

12      now, but I appreciate the Court's comment.

13              MR. MICHAEL:  Your Honor, I want to just comment on

14      one little dilemma that your order is creating, though.  If

15      we're filing a motion to continue, the basis of the motion to

16      continue is going to be that we have need of time to complete

17      our investigations regarding all of this new evidence that

18      we've discovered.

19          But that date for hearing on a motion to continue is the

20      same date as the motion to -- that the Court has set for us to

21      have hearings on substantive issues that we have to file other

22      motions.  We can't file those motions until we are able to do

23      the investigations which is the basis for our motion to

24      continue.

25              THE COURT:  Well, if you make a good case for a
```

**PROCEEDINGS**

1    continuance then you don't have to worry about that; right?

2           **MR. MICHAEL:**  That would solve it all.

3           **THE COURT:**  And if you -- you know, you can also make

4    a case, if you want to argue that an alternative to a

5    continuance you need to, you know, you need to be able to tee

6    up a substantive motion regarding these recent disclosures at a

7    later time, like at the pretrial conference or whatever.  You

8    can propose that as well.

9           But, you know, you, again, you have two months to

10   investigate all this stuff.  And you'll have every opportunity

11   to make your best case for a continuance while you're in the

12   process of investigating.

13          **MR. BUSTAMANTE:**  Your Honor, that's fine, and I hear

14   the Court's message very clearly.

15          And what I would like to request, though, if we can have

16   an additional week to file this motion to continue because it

17   is a voluminous amount of information that needs to get

18   categorized and work through to, you know, get -- have an

19   opportunity to give a clear picture to the Court -- which is

20   different for me, as the Court said, you know, just giving the

21   Court information and assuming that the Court knows more than

22   it does because of, you know, just the -- that's the way it is.

23          **THE COURT:**  Because you've been living and breathing

24   the case.

25          **MR. BUSTAMANTE:**  Exactly.  Right.

1          **THE COURT:**  Let me see.  So it's currently due

2    the 7th.

3          **MR. BUSTAMANTE:**  Is that correct, Ms. Liu?

4          **MS. LIU:**  That was my calculation for motions due the

5    7th; oppositions on the 14th; replies by the 17th; hearing on

6    the 22nd.  I suppose, if you cut out the reply, we could move

7    everything back a week and still keep the 22nd hearing date.

8          **THE COURT:**  Well, what we will do is the motion will

9    be due on the 10th; the Government's response will be due on

10   the 15th; and the reply will be due on the 17th.  And then the

11   hearing will be on the 22nd.  And that's at 1:00 p.m.,

12   according to my calendar.

13         **MR. BUSTAMANTE:**  Great.  Well, I appreciate the

14   Court's time and --

15         **THE COURT:**  And all of these documents that you're

16   talking about, you know, put them in as exhibits or, you know,

17   attached to declarations so that I can understand the

18   documents.

19         **MR. BUSTAMANTE:**  And, Your Honor, just to be clear for

20   everybody present, the Court's order for the *Giglio* and Jencks

21   is an ongoing order.  And although some disclosure has been

22   made, it's obvious that there's other things still to be

23   produced.

24         And can I ask the Court one question, just so we're not

25   battling this issue?  And that is, if there is e-mails between

**PROCEEDINGS**

1   the cooperating CHS and his handlers during the course of his

2   work for them, we're entitled to those e-mails.  We're not

3   entitled to just a letter summary of what those e-mails said.

4   We're not stuck with the Government deciding how they are going

5   to summarize something.  We're --

6        **THE COURT:**  It sounds like the Government agrees with

7   you about that.  It doesn't sound like you have a dispute about

8   that right now.  Do you?

9        **MS. LIU:**  Well, actually, Your Honor, our position is

10  that our letter summary with excerpts from the e-mails from the

11  discoverable portions are sufficient, because it's the content

12  of the e-mails that are being produced.  I don't think there is

13  a requirement that we produce the e-mails themselves.  The

14  relevant parts have been excerpted out and produced by letter

15  disclosure.

16       **MR. BUSTAMANTE:**  Well, that's nonsensical, Your Honor.

17  We're entitled to -- this is the handler of this CI in this

18  case -- notwithstanding what the facts are.  Forget -- we're

19  just talking about things that are discoverable.  This is a

20  statement by the CI made to his handlers via e-mail, and those

21  disclosures are required.

22       **THE COURT:**  I mean, I think that's right.  I mean, I

23  would need to go back and refresh myself on, you know, the

24  rules about precisely what the Government is required to

25  disclose.

**PROCEEDINGS**

1          MR. BUSTAMANTE:  I'll include that in the motion to

2     continue then if that is not resolved.

3          THE COURT:  Yeah.  I mean, I think you're right, but

4     if that's not resolved, include it in the motion, yes.

5          MR. BUSTAMANTE:  Great.  Thank you for your time,

6     Your Honor.  A pleasure thank you very much.

7          THE COURT:  All right.  Thank you.

8          (Proceedings adjourned at 5:01 p.m.)

9                    ---o0o---

10

11              **CERTIFICATE OF REPORTER**

12          I certify that the foregoing is a correct transcript

13     from the record of proceedings in the above-entitled matter.

14

15     DATE:   Thursday, April 7, 2022

16

17

18

19

20     _____
       Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
21              Official Reporter, U.S. District Court

22

23

24

25