**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

UNITED STATES OF AMERICA,  )
                           )
           Plaintiff,      )
                           )
    VS.                    )   **NO. CR 19-00178-VC-1**
                           )
EVGENI KOPANKOV,           )
                           )
           Defendants.     )
_____)

                              San Francisco, California
                              Thursday, April 28, 2022

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:
                        STEPHANIE M. HINDS
                        UNITED STATES ATTORNEY
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California 94102
            **BY:  CHRISTINA T. LIU**
                **ASEEM P. PADUKONE**
                **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:
                        LAW OFFICE OF MICHAEL & BURCH
                        One Sansome Street, Suite 3500
                        San Francisco, California 94104
            **BY:  DAVID M. MICHAEL, ATTORNEY AT LAW**

Also Present:       **Aaron Tam, U.S. Probation**
                      **Maria Entchevitch, Bulgarian Interpreter**

REPORTED REMOTELY BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
                         CSR No. 7445, Official U.S. Reporter

| | |
|---|---|
| 1 | **Thursday, April 28, 2022**                                              **1:30 p.m.** |
| 2 | P R O C E E D I N G S |
| 3 | ---o0o--- |
| 4 | (Defendant present via Zoom, out of custody.) |
| 5 | **THE CLERK:** Calling Case Number 19-CR-00178, U.S.A. vs. |
| 6 | Evgeni Kopankov. |
| 7 | Counsel, please state your appearances for the record, |
| 8 | starting with the Government. |
| 9 | **MS. LIU:** Christina Liu for the United States. Good |
| 10 | afternoon. |
| 11 | **THE COURT:** Afternoon. |
| 12 | **MR. PADUKONE:** Good afternoon, Your Honor. Aseem Padukone |
| 13 | on behalf of the United States. |
| 14 | **THE COURT:** Hello. |
| 15 | **THE CLERK:** Mr. Michael, we cannot hear you. Did you |
| 16 | select English? |
| 17 | We can't hear you. |
| 18 | (Pause in proceedings.) |
| 19 | **THE CLERK:** Mr. Michael, were you able to locate the |
| 20 | English setting as opposed to the Russian setting? |
| 21 | We still cannot hear you. |
| 22 | Mr. Tam, I'll have you make your appearance right now |
| 23 | while we're waiting for Mr. Michael. |
| 24 | **PROBATION OFFICER TAM:** Thank you. |
| 25 | Aaron Tam on behalf of the Probation Office, Your Honor, |

1   in the event our appearance is required.
2                    (Pause in proceedings.)
3       **THE CLERK:**  Now we've lost him.
4       **THE INTERPRETER:**  He said that he was going to leave and
5   come back.  I was able to hear him, but I don't know that he
6   was able to hear the interpreter on the interpreting channel.
7       **THE COURT:**  I'm sure he clicked "English" and then forgot
8   to do "Mute Original Audio."  That seems to be the common
9   mistake that people make.
10      **THE CLERK:**  Okay.  Mr. Michael, please be sure to select
11  "English" and also "Mute Original Audio."
12      **THE INTERPRETER:**  He's asking whether he should click on
13  the interpretation.  He doesn't know what to do.
14      **THE CLERK:**  Yes.  He needs to select "Interpretation"
15  function, select "English," and then also go back into
16  interpretation and select "Mute Original Audio."
17      **MR. MICHAEL:**  Okay.  I just clicked on --
18      **THE CLERK:**  There you go.
19      **MR. MICHAEL:**  -- English.
20  I'm sorry.  I apologize for that.
21      **THE CLERK:**  Please make your appearance for the record.
22      **MR. MICHAEL:**  This is David Michael, appearing for
23  defendant Evgeni Kopankov, who is present, being assisted by an
24  interpreter.
25      **THE COURT:**  Hello.

1       Hello, Mr. Kopankov.
2       **THE CLERK:**  And Mr. Tam already made his appearance.  Do
3  you need Probation for this hearing, Judge?
4       **THE DEFENDANT:**  Hello, Your Honor.
5       **THE COURT:**  Hi.
6       I don't think so.  I don't think there's a need for
7  Probation -- the Probation Office to be participating.
8       But you're welcome to remain here, Mr. Tam, if you wish.
9       **MR. TAM:**  Thank you, Your Honor.
10      **THE COURT:**  Okay.  Mr. Kopankov, can you hear everything
11 okay?
12      **THE DEFENDANT:**  Yes, I hear everything.
13      **THE COURT:**  Okay.  If you think you might be missing
14 anything, please let the interpreter know.  Okay?
15      **THE DEFENDANT:**  I will do.  Thank you.
16      **THE COURT:**  Okay.  So let me start with the Government.
17      We have the issues that Mr. Kopankov raises in his motion,
18 you know, the reasons that he gives in his motion for why he
19 should be permitted to withdraw his guilty plea.  You've
20 responded.  And I -- I think I understand those issues.  I'm
21 happy to talk about them a little more here today.
22      But I want to raise a different issue, and I want to get
23 your response to it.  Reading between the lines of this motion,
24 my concern is that Mr. Kopankov has not been properly advised
25 of the pros and cons of pleading guilty; and I'm concerned that

1  there could be an ineffective assistance issue here if
2  Mr. Kopankov is not allowed to withdraw his guilty plea.
3       Sort of my takeaway from the papers is that, you know,
4  there are these reasons that are being given for withdrawing
5  the guilty plea.  And maybe on their own, those are good
6  enough; maybe on their own, they're not good enough,
7  Mr. Michael.  But my pretty strong takeaway from the papers is
8  that what may matter most is that Mr. Kopankov was not
9  adequately advised on all of these issues before he entered a
10 guilty plea and that there may have -- he may have felt some
11 undue pressure and been operating on inadequate information
12 when he entered his guilty plea.  And that's something I'm
13 quite concerned about.
14      So before turning to the reasons that are given in
15 Mr. Kopankov's motion, I'd like you to address that concern
16 that I have and ask you if that would be an additional reason,
17 or maybe even a reason in and of itself, to allow Mr. Kopankov
18 to withdraw the guilty plea.
19      **MS. LIU:**  Your Honor, I truthfully was not prepared to
20 brief an ineffective assistance argument but --
21      **THE COURT:**  Well, I'm not saying there was or there
22 wasn't; but I am concerned that, you know, there seems to be a
23 real possibility that Mr. Kopankov was not adequately advised
24 of the -- sort of the reasons for not pleading guilty.  Maybe I
25 should put it that way.

1    **MS. LIU:**  Your Honor, I suppose I would argue that at the
2  change of plea hearing, Your Honor went through a thorough plea
3  colloquy where you asked him if he understood what was
4  happening, if he understood the charges and the plea agreement,
5  if he was satisfied with counsel, if he understood he'd be
6  giving up all these trial rights and appellate rights; and at
7  the end of the plea, Your Honor accepted his plea as knowing
8  and voluntary.
9       So I think --
10   **THE COURT:**  But everything you just said, I mean, if that
11 was enough, then nobody would ever be allowed to withdraw their
12 guilty plea; right?
13   **MS. LIU:**  Let me just check one thing, Your Honor.
14                    (Pause in proceedings.)
15   **THE INTERPRETER:**  Your Honor, may you remind all parties
16 to speak a little bit slower for the interpreter?
17   **THE COURT:**  Sure.
18   **MS. LIU:**  Your Honor, what I would do now is then point
19 the Court back to the fair and just reason standard for
20 permitting a defendant to withdraw his plea.
21      Based on the *Minasyan* case, which the Government cited,
22 the reasons include things like inadequate colloquies, newly
23 discovered evidence, intervening circumstances, or any reason
24 that did not exist at the time of the entry of the plea.  So if
25 there's a potential ineffective assistance claim floating out

there, I think we'd have to fit it into one of those categories.

**THE COURT:** How could it not be? I mean, if there is a real concern that the defendant has not been, you know, adequately -- the basis -- the potential bases for mounting a trial defense have not been adequately communicated to the defendant, how could that not be a basis for withdrawing your guilty plea?

**MS. LIU:** I suppose if that's the -- if the Court were to make such a factual finding, it would be difficult to argue against.

**THE COURT:** Okay. And so, Mr. Michael, let me ask you. I mean, that was the sort of message I was getting from the papers. That was kind of my takeaway from the papers. You didn't say it out loud, maybe, you know, for self-preservation or something like that. But am I right to be concerned that, you know, maybe even if you were aware of certain aspects of the record --

Like, for example, the CI, there was a complaint filed against him, but not an indictment. You know, you try to make a big difference between complaint and indictment. Again, maybe there's something to that; maybe there's not.

And, you know, you talk about the -- you know, the co-defendant's state of mind when the offense was being committed and his ability to accurately remember or truthfully

1  testify about what happened in his communications with
2  Mr. Kopankov because he stated at the plea colloquy that he was
3  drug-addled and his lawyer stated that.  I mean, you know,
4  maybe that's enough; maybe that's not, because there was
5  already some information in the record about drug use and
6  alcohol abuse by the co-defendant.
7     But it seemed to me that the takeaway was that there may
8  not have been adequate communication about these issues with
9  the client prior to the plea colloquy.  And so I wanted to get
10 your opinion on whether there was adequate communications and
11 whether, if not, that was a -- that would be an -- that would
12 be an additional basis, and potentially an independent basis,
13 for allowing your client to withdraw his guilty plea.
14    **MR. MICHAEL:**  You know, I've been in the business about
15 45 years now, Your Honor; and I will tell you, this is the most
16 difficult case that I ever had in terms of my client pleading
17 guilty to the offense.  And I -- I have no problem taking
18 responsibility for perhaps not adequately advising him of the
19 good chance he may have had at trial and taking this case to
20 trial and the insufficiency of the Government's evidence.
21 I think the Court's observations have some merit, you know.
22    I, as well as Mr. Kopankov, have always been torn about
23 how to address this case.  And you know, Your Honor, from all
24 the pleadings that have been filed in this case, that he has
25 lived a really honorable, respectable, commendable life.

1  **THE COURT:** I'm just not sure -- I don't understand what
2  that has to do with his ability to withdraw his guilty plea.
3  **MR. MICHAEL:** So, yeah. I have no problem accepting
4  the Court's opinion that perhaps I did not advise him
5  completely and totally about his potential success at trial
6  without pleading guilty. That possibility is there.
7  **THE COURT:** Can I ask you another question? We're using
8  an interpreter right now. Have you been using an interpreter
9  in your communications regularly with Mr. Kopankov?
10  **MR. MICHAEL:** No. What I have been doing is, most of my
11  communications with him have been along with his wife, who is
12  bilingual, speaks English fluently and Bulgarian fluently. And
13  Mr. Kopankov has some command of the English language where he
14  and I can, in fact, talk together too.
15  Is it possible that perhaps in his dialogues with me where
16  there wasn't an interpreter, that he may have misinterpreted
17  the strengths and weaknesses of the case? Sure, that's
18  possible.
19  I have had singular conversations with him without an
20  interpreter when he has showed up personally to appear in
21  court. We meet for an hour or so before then and discuss the
22  case and the facts. So, yeah, that's a possibility. What he
23  heard from me may have been misunderstood or not completely
24  grasped.
25  **THE COURT:** Well, and, I mean, so it sounds like for some

1   of these communications, it was strictly between you and
2   Mr. Kopankov.
3        **MR. MICHAEL:**  Correct.
4        **THE COURT:**  And for other of these communications, his
5   wife was assisting.  But that's obviously not the same as
6   having an interpreter.
7        **MR. MICHAEL:**  That's correct.  We never used an
8   interpreter outside of the court appearances.
9        **THE COURT:**  Yeah.  I mean, I'm -- I'm a little -- I'm --
10  I think there is -- I think that if you -- particularly if you
11  combine the reasons given in Mr. Kopankov's motion with the
12  reasons that we have just discussed today, I believe that there
13  is a serious issue -- a serious question about whether
14  Mr. Kopankov has, you know, had these issues adequately
15  communicated to him, whether it's because counsel has not done
16  a good enough job or because of interpreta- -- of language
17  issues or both.
18       But I think when you add these issues that we're
19  discussing to the issues that are included in Mr. Kopankov's
20  motion and applying the -- you know, applying the relatively
21  liberal standard, I think that Mr. Kopankov has met his burden
22  to justify withdrawing his guilty plea, and so I'm going to
23  grant that motion now.
24       And then I think we need to set this case for trial.  So
25  when should that be?

1    **MR. MICHAEL:** I've discussed that --

2    **MS. LIU:** Your Honor --

3    **MR. MICHAEL:** -- with the -- I'm sorry.

4    I've discussed it with the U.S. attorney just yesterday,
5    and so she may represent what we -- some of our discussions.

6    **MS. LIU:** Sure, Your Honor.

7    Let's clarify. I'm an assistant U.S. attorney, not the
8    U.S. Attorney.

9    But in any event, we did discuss our availability; and it
10   appears that for the period from August through November, both
11   counsel are only available for the two- or three-week period
12   starting October 17th.

13   Would that be amenable to the Court?

14   **THE CLERK:** Keller wants to go during that time, Judge.

15   **THE COURT:** So we're going to have to wait and see,
16   I guess.

17   I mean, one of the things I'm doing in the next few days
18   is -- you know, we have this system, this highly aggravating
19   system of doling out trials to the judges in these two-week
20   increments. That seems like it may remain in place during the
21   third quarter of 2022. And I keep expressing cautious optimism
22   that that system is going to go away, and it keeps not going
23   away. So I think we should probably operate on the assumption
24   that it'll be in place in the fourth quarter of '22 as well.

25   So I think that what I'm going to have to ask you to do

1  is -- you're telling me that October 17th is a possible trial
2  date?
3              (No verbal response.)
4      **THE COURT:**  And I think you're going to have to put your
5  heads back together.  And given how old this case is, how long
6  it has been dragging on, it's going to have to be a priority
7  for going to trial.  And so you're going to have to come back
8  and give us two additional -- you're going to have to figure
9  out how you might be able to move other stuff around and give
10 us two additional possible dates between now and the end of the
11 year.
12     And then we will kind of shuffle it all -- you know,
13 shuffle all our cases together and figure out where we want to
14 put these trials, and we'll figure that out in the next couple
15 of weeks.
16     **MR. MICHAEL:**  Do you want us to submit that in a written
17 stipulation, Your Honor?
18     **THE COURT:**  If you want, you can just e-mail Kristen.
19     **MR. MICHAEL:**  Thank you.
20     **THE COURT:**  So we've got October 17th.  And I want you to
21 tell me, in addition to October 17th, what are two other dates
22 that you could make work with some effort and with some,
23 you know, moving around your other cases.
24     And how long do you expect the trial to last?
25     **MS. LIU:**  Your Honor, on the Government's side, two weeks

as an estimate; but, of course, if defendant wants to stipulate to certain things, it would be shorter.  The reason for that --

**THE COURT:**  Who would the -- doesn't -- I'm sort of -- from what I remember about this case, I mean, aren't we talking about, like, maybe four witnesses or something like that?

**MS. LIU:**  Your Honor, there are a number of recordings that may take some time to play to the jury and have a witness explain what's in the recordings.  We haven't finalized our witness or exhibit list, but that's one possibility I'd wanted to flag for the Court.

**THE COURT:**  Okay.  Well, I would encourage you all -- I mean, I know that the defense has the right to contest everything; but there are some things that are not worth contesting.  And we do have very, you know, limited trial availability these days; and so I would encourage you to work together to kind of pare down the evidentiary presentation to the jury.

So why don't you get back to Kristen within seven days, letting her know of a couple other dates that you could possibly make work; and if you want to give order of preference, you're free to do that as well.

**MS. LIU:**  Okay.  Would Your Honor like to express a preference for scheduling so that it might tip the scales?

**THE COURT:**  I'm not really sure.  I mean, the problem is that we're kind of just beginning the process of sort of lining

1  up our trials and figuring out where they're going to go.
2      Kristen mentioned that they wanted to do this Keller trial
3  in the week of October 17th.  That'll probably be a two-week
4  trial.  And I think I have to really prioritize getting that
5  case to trial.  We've had so many false starts, and it's a very
6  old case.  And so I think probably we would give priority to
7  Keller.
8      But I would think, of all the other trials, yours would
9  have the second -- second priority probably.  So I think you
10 should -- you should tell us what you want to do.
11     **MS. LIU:**  Okay.  And then I think we should discuss two
12 other issues --
13     **THE COURT:**  Okay.
14     **MS. LIU:**  -- if we're done with the scheduling bit.
15     The first is, since Your Honor has granted the motion to
16 withdraw pleas, the Government's position is that, based on the
17 waivers in the plea agreement, the defendant's statements and
18 admissions in the plea agreement and in court about that
19 section are admissible against him at trial and there's a clear
20 and unambiguous waiver.  And he also waives his right to
21 contest that under Federal Rule of Evidence 410 and Rule 11(f).
22     I don't know if Your Honor would want to make a finding on
23 the record now about that or wait until --
24     **THE COURT:**  I think the better thing to do would be to --
25 would be to adjudicate that, either by way of motions in limine

1  or, if you believe that it's appropriate to tee up a motion
2  before we even get to the pretrial conference, if it would be
3  helpful to you to tee up a motion regarding, you know,
4  the Government's ability to use the plea agreement, you can --
5  you can certainly do that.
6      But it's not an issue that I've ever dealt with before.
7  So I would not be comfortable, you know, making a ruling on
8  that as I sit here right now.
9      **MR. MICHAEL:** Right.  We have initially addressed that
10 also in the pleadings, in the Government's opposition, where
11 there was a mention by the Government, and also in our reply
12 brief.  But --
13     **THE COURT:** Yeah, I saw that there was some discussion of
14 that, but it doesn't seem like something I should be
15 adjudicating now; right?
16     **MR. MICHAEL:** I agree.
17     **THE COURT:** Okay.
18     **MS. LIU:** Okay.  And the second matter is, now that the
19 pleas have been withdrawn, I believe the speedy trial clock is
20 ticking again.  Would it make sense to set a placeholder status
21 conference and discuss whether it makes sense to exclude time
22 up to that point?
23     **THE COURT:** Well, I think it definitely makes sense to
24 exclude time up to that point if both sides agree.
25     Obviously, this is a highly unusual situation with the

1  withdrawal of the guilty plea, and everybody needs to start
2  gearing up again for trial and sort of press the reset button.
3  And so for effective preparation and because of the sort of
4  complexity of the -- the complexity of the situation, I would
5  think it would be appropriate to set a status conference for
6  couple of months from now and then -- and exclude time between
7  now and then.
8      So does everybody agree with that?
9      **MR. MICHAEL:**  That's fine, Your Honor.
10     **MS. LIU:**  Yes, Your Honor.
11     **THE COURT:**  All right.  Should we get -- when should we
12 get together again?  August maybe?  July?  August?
13     **MR. MICHAEL:**  July might be a good time.
14     **MS. LIU:**  Sure.  July works.
15     **THE COURT:**  July 13th perhaps?
16     **MR. MICHAEL:**  As long as it's not a Friday.
17     **THE COURT:**  Wednesday.
18     **MS. LIU:**  What time would the hearing be?  I have a 1:30
19 court conflict on that day.
20     **THE CLERK:**  11:00 a.m.
21     **THE COURT:**  11 o'clock by Zoom.
22     **MS. LIU:**  That works.
23     **MR. MICHAEL:**  I didn't catch that, Your Honor.
24 11 o'clock?
25     **THE COURT:**  Yeah.  By Zoom.

1    **MR. MICHAEL:**  By Zoom.  That's fine, Your Honor.

2    **MS. LIU:**  That works.  Thank you.

3    **THE COURT:**  Okay.  Great.

4    All right.  Thank you very much.

5    **MR. MICHAEL:**  Thank you, Your Honor.  Appreciate it.

6    **THE CLERK:**  Court is adjourned.

7             (Proceedings adjourned at 1:56 p.m.)

8                          ---o0o---

10                  **CERTIFICATE OF REPORTER**

11        I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled matter.

14   DATE:  Saturday, June 11, 2022

17   _____

18       Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
                  Official United States Reporter